DUNCAN, J.
*28 **265 Aggravated identity theft is defined by ORS 165.803, which the legislature enacted to create a new, more serious crime than identity theft as defined by ORS 165.800. The state can charge a defendant with aggravated identity theft by aggregating multiple identity thefts. In this case, the state charged defendant with one count of aggravated identity theft, based on his possession of files containing personal information regarding 27 other persons. Based on that same conduct, the state also charged defendant with 27 counts of identity theft. Defendant pleaded guilty to all the counts, but argued that his identity thefts merged into his aggravated identity theft because each of the identity thefts was a lesser-included offense of the aggravated identity theft. The trial court rejected defendant's argument and entered separate convictions for each of the identity thefts and the aggravated identity theft.
Defendant appealed, renewing his argument that his identity thefts merged into his aggravated identity theft because each of his identity thefts was a lesser-included offense of his aggravated identity theft. The state did not dispute that each of defendant's identity thefts was a lesser-included offense of his aggravated identity theft, but argued that, because there were 27 victims, the trial court could impose 27 separate convictions. The Court of Appeals agreed with the state. State v. Gensitskiy , 287 Or. App. 129, 401 P.3d 1219 (2017).
On review, we hold that the trial court erred in failing to merge defendant's multiple identity thefts into his aggravated identity theft. As we explain below, the legislature intended that, if the state aggregates multiple identity thefts to serve as the basis for an aggravated identity theft, the identity thefts are lesser-included offenses of the aggravated identity theft. Because the identity thefts are lesser-included offenses of the aggravated identity theft, they merge into the aggravated identity theft under ORS 161.067(1), which, as relevant here, requires merger when the same conduct violates two statutory provisions and all the elements of one of the provisions are included in the other. Contrary to the state's argument, which the Court of **266 Appeals accepted, ORS 161.067(2) does not preclude merger. ORS 161.067(2) provides, in part, that when the same conduct-"though violating only one statutory provision"-involves two or more victims, there are as many separately punishable offenses as there are victims. ORS 161.067(2) is applicable only when the same conduct or criminal episode violates a single statutory provision. Thus, it does not apply when, as here, the conduct at issue violates the identity theft statute and the aggravated identity statute, which are separate statutory provisions. Finally, merger of defendant's identity thefts into his aggravated identity theft is consistent with the legislative goal of ensuring accurate criminal histories because a conviction for the aggregate offenses accurately reflects the component offenses and their victims.
For those reasons, we reverse the decision of the Court of Appeals and the judgment of the trial court, and we remand for merger of defendant's identity thefts into his aggravated identity theft and resentencing.
I. HISTORICAL AND PROCEDURAL FACTS
During a traffic stop, defendant consented to a search of his car, which resulted in the discovery of 27 files he had taken from the rental office of an apartment complex. The files contained information about tenants of the complex, including information that constituted "personal identification" for the purposes of the identity theft statutes, such as names, addresses, telephone numbers, driver's license numbers, and Social Security numbers. See ORS 165.800(4)(b) (defining "personal identification"). Each of the 27 files contained the personal identification of at least one person whose personal identification was not in any of the other files.
*29 A. Trial Court Proceedings
As mentioned, the state charged defendant with one count of aggravated identity theft and 27 counts of identity theft.[1] Identity theft is defined by ORS 165.800, which provides, in part:
**267 "(1) A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person.
"(2) Identity theft is a Class C felony."
In keeping with the wording of ORS 165.800, each of the identity theft counts alleged that defendant "did unlawfully, with the intent to deceive or defraud, obtain, possess, transfer, create, utter or convert to [his] own use the personal identification of another[.]" In addition, each of those counts alleged that the identity theft was committed as part of "the same act and transaction" as the other identity theft counts and the aggravated identity theft count. The identity theft counts did not include the names of the persons whose identifications were at issue, but they did specify that each of the identity thefts involved "personal identification from a different person" than in the other identity thefts.[2]
Based on the conduct underlying the identity theft counts, the state also charged defendant with one count of aggravated identity theft, which is defined by ORS 165.803. Specifically, the state charged defendant with violating ORS 165.803(1)(d), which provides:
"(1) A person commits the crime of aggravated identity theft if:
"* * * * *
**268 "(d) The person violates ORS 165.800 and has in the person's custody, possession or control 10 or more pieces of personal identification from 10 or more different persons.
"(2) Aggravated identity theft is a Class B felony."
Pursuant to a plea agreement, defendant signed a plea petition in which he agreed to plead guilty to all counts and expressly reserved the right to argue that the identity thefts merged into the aggravated identity theft. At the plea hearing, defendant pointed out that the state had alleged that each of the identity thefts was part of the same act and transaction as the aggravated identity theft, and he argued that the trial court could not convict him for "multiple single victim crimes" and a "multiple victim" crime, based on the same conduct and victims. The state disagreed, arguing that the identity thefts did not merge into the aggravated identity theft because each identity theft had a different victim. The trial court accepted the state's argument and entered separate convictions for each of the identity thefts and the aggravated identity theft.
B. Court of Appeals Proceedings
Defendant appealed, renewing his argument that, when the state aggregates identity thefts in order to charge aggravated identity theft, each identity theft is a lesser-included offense of the aggravated identity theft. In support of his argument, defendant relied on ORS 161.067, which establishes rules for when statutory violations, based on *30 the same conduct or criminal episode, constitute "separately punishable offenses." That statute provides, in part:
"(1) When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.
"(2) When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims. ***
"(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the **269 same statutory provision against the same victim, there are as many separately punishable offenses are there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."
ORS 161.067 identifies circumstances in which a court can enter separate convictions for violations based on the same conduct or criminal episode. State v. White , 341 Or. 624, 637-38, 147 P.3d 313 (2006). In other words, it identifies circumstances in which violations based on the same conduct or criminal episode do not merge ; if those circumstances do not exist, then the violations merge .
Defendant argued that ORS 161.067(1) applied, but that its conditions were not satisfied, and, therefore, the trial court could not enter separate convictions under that subsection for his identity thefts and his aggravated identity theft. ORS 161.067(1) applies when "the same conduct or criminal episode violates two or more statutory provisions," and it allows for separate convictions only when "each provision requires an element that the others do not." Thus, as relevant here, a court cannot enter separate convictions under ORS 161.067(1) for violations of two statutory provisions if the violations are based on the same conduct and one of the violations is a lesser-included offense of the other. See State v. Tucker , 315 Or. 321, 331, 845 P.2d 904 (1993) (holding that the requirements for separate convictions under former ORS 161.062(1) (1985), repealed by Or. Laws 1999, ch 136, § 1-which is the "not quite identical twin" of ORS 161.067(1), State v. Crotsley , 308 Or. 272, 276 n. 3, 779 P.2d 600 (1989) -"are not met where one offense charged truly is a lesser included offense of another offense charged, that is, when the former has no elements not also present in the latter, even though the latter has additional elements not present in the former"). Applying that rule, defendant argued that his identity thefts merged into his aggravated identity theft. Defendant's theory was that, to prove aggravated identity theft under ORS 165.803(1)(d), the state was required to prove at least 10 identity thefts as lesser-included offenses and that, in this case, the state had **270 based the aggravated identity theft count on all 27 of the identity theft counts because all of the identity thefts were alleged to have been committed as part of the same act and transaction as the aggravated identity theft.
The state did not dispute that each of defendant's identity thefts was a lesser-included offense of the aggravated identity theft or that, as a general rule, ORS 161.067(1) requires merger of lesser-included offenses into greater-inclusive offenses. But the state argued that ORS 161.067(2), as interpreted by the Court of Appeals in State v. Munoz-Juarez , 271 Or. App. 261, 350 P.3d 516 (2015), creates an exception to that general rule when the offenses have different victims. It took the position that, "[w]ere it not for ORS 161.067(2), all of defendant's counts of identity theft would, in fact, merge with the greater offense of aggravated identity theft," but that ORS 161.067(2) requires "as many separately punishable offenses as there are victims." Because there were 27 identity thefts, each with its own victim, the state argued that there had to be 27 punishable offenses. Accordingly, the state conceded that one of the identity thefts merged into the aggravated identity theft, but contended *31 that the other 26 identity thefts did not, explaining:
" ORS 161.067(1) and (2) should compel the merger of one of defendant's counts of identity theft with the aggravated identity theft count. Subsection (1) requires the merger, because identity theft is a lesser-included offense. However, ORS 161.067(2) forecloses merger of any of the remaining counts of identity theft, because each count represents a different victim."
(Emphasis in original.)
The Court of Appeals agreed with the state, concluding that its decision in Munoz-Juarez was controlling. Gensitskiy , 287 Or. App. at 133, 401 P.3d 1219. In Munoz-Juarez , the Court of Appeals relied on a footnote in one of its earlier decisions, State v. Owens , 102 Or. App. 448, 795 P.2d 569, rev den , 311 Or. 13, 803 P.2d 731 (1990), for the proposition that " ' ORS 161.067(2) forecloses merger in all cases in which a single criminal episode involves multiple victims.' "
**271 Munoz-Juarez , 271 Or. App. at 265, 350 P.3d 516 (quoting Owens , 102 Or. App. at 452 n. 6, 795 P.2d 569 ) (emphasis in Owens )).
In Owens , the defendant was convicted of first-degree robbery and third-degree theft for using force against a store clerk to steal a carton of cigarettes. Owens , 102 Or. App. at 450, 795 P.2d 569. The Court of Appeals held that the guilty verdicts for those offenses did not merge under ORS 161.067(1), because each of the offenses required proof of an element that the other did not. Id . It then added that, even if that was incorrect, merger was foreclosed by ORS 161.067(2) because the offenses had different victims; specifically, the clerk was the victim of the robbery and the store owner was the victim of the theft. Id . at 451, 795 P.2d 569 (holding that, because "there were two victims of defendant's offenses," there were two separately punishable offenses under ORS 161.067(2) ).
Judge Graber dissented, noting that ORS 161.067(2) "plainly refers and applies only to 'conduct * * * violating only one statutory provision.' " Id. at 454, 795 P.2d 569 (Graber, J., dissenting) (emphasis in original). Judge Graber concluded that the majority had erred in concluding that ORS 161.067(2) precluded merger:
"It is correct, as the majority notes, that there were separate victims of defendant's violations of two statutes. Nevertheless, the majority dances around the fact that there were two statutes violated [the robbery statute and the theft statute]. ORS 161.067(2) is very clearly limited to circumstances where the defendant's conduct violates only one statutory provision."
Id. (emphasis in original). Thus, in Owens , the Court of Appeals majority applied ORS 161.067(2) to violations of two statutory provisions and held that violations against two different victims did not merge.
Owens did not involve the aggregation of multiple lower-classification crimes against individual victims into a single higher-classification crime against the same victims as a group. But two later Court of Appeals cases did, and in those cases the Court of Appeals held that the lower-classification component crimes merged into the higher-classification aggregate crime. In **272 State v. Fujimoto , 266 Or. App. 353, 359-60, 338 P.3d 180 (2014), the defendant was found guilty of multiple counts of first-degree theft, based on thefts from different stores, and one count of organized retail theft, based on the same thefts. The Court of Appeals held that the first-degree thefts merged into the organized retail theft. Id . Similarly, in State v. Chappell , 286 Or. App. 679, 401 P.3d 242 (2017), the defendant was found guilty of multiple counts of first-degree theft, based on thefts from different persons, and one count of aggravated theft, based on the same thefts. The state conceded that the first-degree thefts merged into the aggravated first-degree theft, and the Court of Appeals agreed:
"As the state acknowledges, Counts 3, 6, and 7 [the first-degree theft counts] 'were subsumed by' Count 5 [the aggravated first-degree theft count]. Therefore, the guilty verdicts on Counts 3, 6, and 7 should have been merged into the guilty verdict on Count 5. *** The [trial] court could not impose separate convictions for individual thefts that had been aggregated to support an additional, greater theft conviction ."
Id . at 680, 401 P.3d 242 (emphasis added).
To summarize, in Owens , the Court of Appeals ruled that ORS 161.067(2) applies to *32 violations of two or more statutory provisions and precludes merger of offenses against different victims. Applying that rule, the court held that the defendant's offense against one victim did not merge into his offense against a different victim. But later, in Fujimoto and Chappell , the court held that offenses against different victims, which were aggregated to serve as the basis for a more serious offense, merged into the more serious offense.
In Fujimoto and Chappell , the state did not argue that ORS 161.067(2) required separate convictions for each victim. But, as mentioned, the state has made that argument in this case, arguing in the Court of Appeals that one of defendant's identity thefts merged into his aggravated identity theft, but the others did not. The Court of Appeals accepted that argument and reversed and remanded for merger of one of defendant's identity thefts into his aggravated identity theft and for resentencing. Gensitskiy , 287 Or. App. at 133, 401 P.3d 1219. On defendant's petition, we allowed review.
**273 II. PARTIES' ARGUMENTS ON REVIEW
On review, defendant renews his argument that, under ORS 161.067(1), all his identity thefts merge into his aggravated identity theft because the former are lesser-included offenses of the latter. He further argues that ORS 161.067(2) does not apply because, as Judge Graber asserted in Owens , it applies only when the same conduct or criminal episode violates a single statutory provision.
In response, the state renews its argument that ORS 161.067(2) applies and precludes merger of all but one of defendant's identity thefts into his aggravated identity theft because each of the identity thefts has a different victim. In addition, the state retracts its concession that all of defendant's identity thefts would merge into his aggravated identity theft under ORS 161.067(1), were it not for ORS 161.067(2). It now contends that defendant's offenses do not merge under ORS 161.067(1), which applies to violations of "two or more statutory provisions," because the identity theft statute and the aggravated identity theft statute "are not separate statutory provisions." It also appears to argue that, even if the identity theft statute and the aggravated identity theft statute are separate statutory provisions, only one of defendant's identity thefts is a lesser-included offense of his aggravated identity theft because the state is not required to prove more than one identity theft in order to prove aggravated identity theft under ORS 165.803(1)(d).
III. ANALYSIS
Before turning to the parties' arguments, we note that the general issue in this case-how to treat multiple statutory violations based on the same conduct or criminal episode-"is one of the most vexing in criminal law." State v. Cloutier , 286 Or. 579, 582-83, 596 P.2d 1278 (1979). And it is one that can arise at different points in a criminal proceeding. It can affect, among other things, whether statutory violations can result in separate convictions and sentences, and whether they can be prosecuted in separate proceedings. Id . at 585, 596 P.2d 1278. As this court has observed, "many incidents that would appear as a single 'act' or 'crime' from a nonlegal perspective are also violations of several distinct criminal **274 laws," but, "[i]t does not follow, merely because a defendant can be charged with more than one violation of a statute, that the legislature also meant each violation to be the basis for a separate conviction or sentence, or that an objecting defendant may be tried for each in a separate proceeding." Id . at 583, 585, 596 P.2d 1278.
The parties' arguments in this case concern the legislative intent underlying the aggravated identity theft statute, ORS 165.803, and the merger statute, ORS 167.067. We turn first to the aggravated identity theft statute. As we explain below, the text, context, and legislative history all support the conclusion that the legislature defined aggravated identity theft to include identity thefts and did not intend to allow a defendant to be convicted of both the greater-inclusive offense and its lesser-included offenses.
A. The Aggravated Identity Theft Statute, ORS 165.803
When interpreting a statute, our task is to ascertain the legislature's intent.
*33 State v. Gaines , 346 Or. 160, 171, 206 P.3d 1042 (2009) ; ORS 174.020. To do so, we look first to the text and context of the statute. Gaines , 346 Or. at 171, 206 P.3d 1042. Therefore, we return to the text of the aggravated identity theft statute, ORS 165.803, and the identity theft statute, ORS 165.800, to which it refers. See PGE v. Bureau of Labor and Industries , 317 Or. 606, 611, 859 P.2d 1143 (1993) (stating that the context of a statute includes other related statutes). ORS 165.803 provides, in part:
"(1) A person commits the crime of aggravated identity theft if:
"(a) The person violates ORS 165.800 in 10 or more separate incidents within a 180-day period;
"(b) The person violates ORS 165.800 and the person has a previous conviction for aggravated identity theft;
"(c) The person violates ORS 165.800 and the losses incurred in a single or aggregate transaction are $10,000 or more within a 180-day period; or
"(d) The person violates ORS 165.800 and has in the person's custody, possession or control 10 or more pieces of personal identification from 10 or more different persons.
**275 "(2) Aggravated identity theft is a Class B felony."
ORS 165.800 provides, in part:
"(1) A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person.
"(2) Identity theft is a Class C felony."
The text and context of ORS 165.803 show that the legislature defined aggravated identity theft to include identity theft. They also show that the legislature intended to allow the state to aggregate multiple identity thefts in order to secure a conviction for aggravated identity theft, which is a more serious crime.
The legislative history of ORS 165.803 confirms that understanding. The legislature enacted the identity theft statute, ORS 165.800, in 1999. Or. Laws 1999, ch 1022, § 1. It enacted the aggravated identity theft statute, ORS 165.803, eight years later, in 2007, in response to concerns about the limitations of the identity theft statute in large-scale identity theft cases. Or. Laws 2007, ch 584, § 1. As described below, the subsection of the aggravated identity theft statute at issue here, ORS 165.803(1)(d), was intended to enable the state to aggregate multiple identity thefts into a single aggravated identity theft, resulting in smaller indictments, more efficient prosecutions, and more severe penalties.
ORS 165.803 began as Senate Bill (SB) 464 (2007). SB 464 was sponsored by the Regional Economic Crime Investigation Center, and former Washington County Deputy District Attorney Dan Thennell helped draft it. Tape Recording, Senate Committee on Commerce, SB 464, Feb. 12, 2007, Tape 11, Side A (statement of Dan Thennell). As Thennell explained, SB 464 was intended to accomplish two goals: (1) to enable the state to convict prolific identity thieves of a more serious offense, for which a greater punishment could be imposed; and (2) to make the prosecution of large-scale identity theft cases more efficient. Id. One way that SB 464 would achieve both of those goals was by allowing the state to aggregate multiple identity thefts into one aggravated identity theft. Id. As Thennell **276 told the Senate Commerce Committee at the first hearing on the bill, SB 464 would allow the state
"to target the most prolific identity thieves and to also allow these crimes to be prosecuted efficiently in a smaller indictment which would ease resources of court staff, department of corrections."
Id. Thennell also told the committee that the aggregation of multiple identity thefts would not relieve prosecutors of the burden of proving the identity thefts:
"If we could encompass 10 victims into one different count of identity theft it doesn't ease the burden on the prosecutor to prove the elements of the crime, but it allows us to encompass more victims to have their day in court and to in some respects put a face on what was done to them. I believe that if Senate Bill 464 is passed it will allow these large cases of *34 identity theft to be done in smaller indictments and to allow people who are committing the worst of the worst to get more time ."
Id . (emphases added).
Similarly, Captain Jeff Groth of the Tualatin Police Department told the committee that SB 464 would simplify prosecutions "by allowing for the charging of aggravated identity theft as opposed to numerous, numerous charging documents." Id . (statement of Jeff Groth) (emphasis added). Likewise, Marion County Sheriff Raul Ramirez, President of the Oregon State Sheriffs Association, told the committee that SB 464 would "allow multiple-profile and large-loss fraud cases to be accurately charged using fewer numbers of counts to fully encompass the fraudulent transactions and each victim's losses ." Id . (statement of Raul Ramirez) (emphasis added). As Washington County Deputy District Attorney Gina Skinner explained, SB 464 would improve the processing of large-scale identity theft cases which were
"inefficient for every step of the court system. For the juries, for the judges, for the court staff-they have to fill out all this paperwork, and we want to be able to capture that and yet allow as many victims as possible to be listed victim[s] and to be able to adequately get restitution at the end of **277 the trial, to be able to be identified as a victim for any civil process that they may need down the road."
Id. at Tape 12, Side A (statement of Gina Skinner) (emphasis added).
At the time of the first hearing on SB 464, section 1(1)(d) of the bill-which became ORS 165.803(1)(d), the statutory provision at issue in this case-provided:
"(1) A person commits the crime of aggravated identity theft if:
"* * * * *
"(d) The person violates ORS 165.800 and has in the person's custody, possession or control 10 or more pieces of personal identification as that term is defined in ORS 165.800."
Regarding section 1(1)(d), Senator Byers asked whether "control" would extend to situations where, for example, a person had a computer database containing the personal information of many other persons. Groth answered that it could, but that "you have to tie it all together, as to them having a bad will, or a desire to carry out these crimes, as compared to just having it in your possession[.]" Id. at Tape 11, Side A (statement of Jeff Groth).
Also regarding section 1(1)(d), Senator Avakian asked whether it would apply if a person possessed 10 or more pieces of personal identification from just one person. Thennell answered that it would. Avakian then confirmed:
"[AVAKIAN:] So you could just have one victim with multiple pieces of ID, 10 or more, or, you could have multiple victims with multiple pieces of ID. Either way, you can get to the Class B here, right?
"[THENNELL:] Correct."
Id. at Tape 12, Side A (statement of Dan Thennell). Avakian then said that he was "struggling" with whether there was a constitutional problem with section 1(1)(d). Id . He was concerned that it might relieve the state of the burden of proving that a defendant had the intent to deceive or defraud with **278 respect to each piece of personal identification. He expressed his concern by asking whether, if the state proved the elements of identity theft for one or two victims, it would be relieved of the burden of doing so for the remaining victims:
"[If] you have 20 victims. And you prove the elements of one or two of the victims in that chain. You prove that there were 12 people, so you're subject then to this statute. Is there any constitutional issue with regard to the defendant having the right to pull in the other 10 or 12 victims or something that were not part of-the main part of the evidence of your case?"
Id . (statement of Senator Avakian). Clackamas County Deputy District Attorney Steve Mygrant answered that the bill did not relieve the state of the burden of proving "10 or more victims, or 10 or more pieces of personal information," but that a prosecutor could do so in a variety of ways:
"Well, I think that a prosecutor that uses this crime as a tool to go after a *35 prolific identity thief would have to be very careful *** in putting on admissible evidence to prove their elements, which would include 10 or more victims, or 10 or more pieces of personal information. There are a multitude of scenarios on how that proof could come in, but it will not relieve the state of its ultimate burden of proving beyond a reasonable doubt that element, which would be 10 or more victims, or 10 or more pieces of personal identification. Whether they choose to have all 12 victims come in, or if they choose to have all 12 pieces of different victims' information with a thumbprint from the suspect on each one of them, or a confession from the suspect."
Id . (statement of Steve Mygrant) (emphasis added). Mygrant's answer did not resolve Avakian's concerns. Following up, Avakian asked whether the bill would allow a factfinder to assume that, if a defendant possessed one piece of identification with the intent to deceive or defraud, the defendant had the same intent with respect to every other piece of identification in his possession:
"[AVAKIAN:] Simply because those others were in his or her possession there's an assumed intent to do something wrong with them. That doesn't raise a constitutional issue?
**279 "[MYGRANT:] I wouldn't call it an assumed intent. But I would call it additional evidence to suggest that possibly he had the intent to deceive or defraud."
Id . In other words, the state would have to prove that the defendant had the intent to deceive or defraud, but it could do that through circumstantial evidence.
Later, Mygrant directly addressed whether the state had to prove an intent to deceive or defraud with respect to each piece of identification and affirmed that it did:
"[MYGRANT:] In thinking this through, we would have to prove that they intended to defraud-that they possessed this personal identification-all 10 pieces with the intent to deceive or defraud . And how we do that is-there's a variety of different ways we could do that-but we certainly would have to prove that they intended to defraud or deceive each specific ID that they had, and that there were more than 10 .
"[AVAKIAN:] If that's the interpretation, yeah, that makes a huge difference in what I was getting at. I don't see that in the plain language of this, but it may be found in the rest of the statute somewhere. What I see here is an assumption of that if they are possessing more than 10, but maybe I'm interpreting that incorrectly."
Id . (emphasis added). The chair of the committee, Senator Floyd Prozanski, who was also a prosecutor, responded that the bill required the state to prove an intent to deceive or defraud with respect to each piece of identification:
"[PROZANSKI:] And that's from my prosecution [experience], is basically, you have to show the intent that whatever they have they have the intent to actually defraud and carry forward."
Id . Thus, both Mygrant and Prozanski told Avakian that section 1(1)(d) required the state to prove that the defendant had a culpable mental state-specifically, the intent to deceive or defraud-with respect to each piece of identification.[3]
**280 At the next public hearing on the bill, the committee approved amendments to SB 464, including one that amended section 1(1)(d) to its final form by adding the requirement that the 10 or more pieces of personal identification be from 10 different persons. Tape Recording, Senate Committee on Commerce, SB 464, Apr. 11, 2007, Tape 44, Side A. The Senate passed SB 464 as amended, and the bill proceeded to the House. Representative Greg MacPherson presented the bill on the House floor for its final reading and explained that it created a felony, aggravated identity theft, that was classified as a more serious felony than ordinary *36 identity theft, and that one of the factors that elevated ordinary identity theft to aggravated identity theft was the possession of 10 or more pieces of personal identification from 10 or more different victims :
"Senate Bill 464 gives law enforcement an additional weapon in the ongoing battle with identity thieves. It creates a Class B felony of aggregated identity-aggravated identity theft. Identity theft is already a Class C felony. Senate Bill 464 creates an aggravated version of the crime with a stiffer penalty. Aggravated identity theft applies to someone who commits identity theft 10 or more times in 180 days, who commits identity theft of an amount over $10,000 in a 180-day period, or who commits identity theft and possesses 10 or more pieces of personal identification from 10 or more different victims ."
Audio Recording, House of Representatives, SB 464, June 11, 2007, at 1:22:05 (comments of Greg MacPherson) (emphasis added), https://olis.leg.state.or.us/liz/2007R1/2007-06-11 (accessed July 16, 2019). The House passed SB 464, and it was later codified as ORS 165.803.
To summarize, the text, context, and legislative history of the aggravated identity theft statute show that the statute was intended, in part, to allow the state to aggregate multiple identity thefts into an aggravated identity theft, so that prolific identity thieves could be convicted of a more serious offense and the prosecutions of such thieves would be more efficient. The statute was intended to allow the charging of multiple identity thefts in a "smaller indictment." Tape Recording, Senate Committee on Commerce, SB 464, Feb. 12, 2007, Tape 11, Side A (statement of Dan **281 Thennell). It was intended to allow "for the charging of aggravated identity theft as opposed to numerous, charging documents." Id . (statement of Jeff Groth) (emphasis added). Aggravated identity theft charges would "fully encompass the fraudulent transactions and each victim's losses." Id . (statement of Raul Ramirez). In other words, the aggravated identity theft would "capture" the identity thefts. Id at Tape 12, Side A (statement of Gina Skinner). The victims of the aggravated identity theft would include the victims of the identity thefts upon which the aggravated identity theft was based and, therefore, each victim would be able to "get restitution" and "be identified as a victim for any civil process that they may need down the road." Id. at Tape 12, Side A (statement of Gina Skinner).
The legislative history underlying the aggravated identity theft statute indicates that the legislature intended that a conviction for aggravated identity theft would be in lieu of convictions for the identity thefts on which it was based. Thus, it indicates that when, as here, the state charges a defendant with multiple counts of identity theft and, based on the same conduct, also charges the defendant with aggravated identity theft, the individual identity thefts merge into the aggravated identity theft.[4] That indication is confirmed by application of the merger statute.
B. The Merger Statute, ORS 161.067
ORS 161.067 identifies circumstances in which the same conduct or criminal episode constitutes separately punishable offenses. If the circumstances do not exist, then the conduct or criminal episode results in a single conviction; that is, guilty verdicts based on the conduct or criminal episode merge.[5] Again, ORS 161.067 provides, in part:
**282 "(1) When the same conduct or criminal episode violates two or more statutory provisions and each provision requires *37 proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations.
"(2) When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims. ***
"(3) When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."
As mentioned, defendant argues that ORS 161.067(1) applies, but that the conditions for separate punishable offenses that it establishes are not met, and, therefore, it requires merger of his identity thefts into his aggravated identity theft; he further argues that ORS 161.067(2) does not apply. In response, the state argues that ORS 161.067(1) does not apply, but that even if it does, ORS 161.067(2) precludes merger. We turn first to the parties' arguments about ORS 161.067(1).
By its terms, ORS 161.067(1) applies when the same conduct or criminal episode violates "two or more statutory provisions." In that circumstance, the violations result in separate punishable offenses only if each provision requires proof of an element that the other does not. Thus, if the same conduct violates two statutory provisions, one of which is a lesser-included offense of the other, the violations result in a single punishable offense; that is, they merge. Crotsley , 308 Or. at 279-80, 779 P.2d 600 ; Tucker , 315 Or. at 331, 845 P.2d 904 ).
Defendant argues that ORS 161.067(1) applies because his identity theft and aggravated identity theft charges are based on the same conduct and because the identity theft statute and the aggravated identity theft statute **283 are separate statutory provisions. Defendant further argues that when the state charges a defendant with aggravated identity theft as an aggregate offense, all the component identity thefts are lesser-included offenses of, and merge into, the aggravated identity theft under ORS 161.067(1).
In response, the state retreats from its concession in the Court of Appeals that, under ORS 161.067(1), defendant's identity thefts would merge into his aggravated identity theft. It now argues that ORS 161.067(1) is not the applicable subsection of the merger statute because the identity theft statute and the aggravated identity theft statute are not "separate statutory provisions." It also argues that, even if ORS 161.067(1) applies, only one of defendant's identity thefts is a lesser-included offense of his aggravated identity theft because it does not need to prove more than one identity theft in order to prove aggravated identity theft under ORS 165.803(1)(d). That is so, the state continues, because a person commits aggravated identity theft under ORS 165.803(1)(d) if the person commits a single identity theft and possesses 10 or more pieces of personal identification from 10 or more persons, regardless of whether the person possesses the identifications with the intent to use them to deceive or defraud.
1. Whether ORS 165.800 and ORS 165.803 are separate statutory provisions
The first issue under ORS 161.067(1) is whether the identity theft statute, ORS 165.800, and the aggravated identity theft statute, ORS 165.803, are "separate statutory provisions." Whether two statutes (or two sections, subsections, or paragraphs of a statute) are "separate statutory provisions" for the purposes of ORS 161.067 depends on whether the legislature intended to create two crimes as opposed to, for example, two ways of committing the same crime. State v. White , 346 Or. 275, 280, 211 P.3d 248 (2009). Here, we readily conclude that the identity theft statute and the aggravated identity theft statute are separate statutory provisions. They are separate statutes, in which the legislature has defined crimes to which it *38 has attached different names, classifications, and consequences. Their structure and content indicate that they are intended to create **284 separate crimes. As we have observed with respect to other pairs of statutes, "It is difficult to see how, when the legislature sets out the offenses in separate sections, defines them as different degrees of an incrementally graded offense, and assigns them different punishments, those can be anything other than separate provisions for purposes of [ ORS 161.067 ]." State v. Parkins , 346 Or. 333, 354-55, 211 P.3d 262 (2009) ; see also White , 346 Or. at 292-93, 211 P.3d 248 (Kistler, J., concurring) (suggesting a "simpler and less subjective interpretation of the phrase 'statutory provision,' " specifically "that each crime identified as such in the criminal code constitutes a separate statutory provision and the fact that there are alternative means of committing those crimes does not make each alternative means a separate provision within the meaning of ORS 161.067(1)").
In arguing to the contrary, the state contends that the identity theft statute and the aggravated identity theft statute are not separate statutory provisions because they address the same legislative concern. In doing so, the state relies on State v. Barrett , 331 Or. 27, 10 P.3d 901 (2000), for the proposition that "[s]tatutory provisions are separate for purposes of ORS 161.067 if they address 'separate legislative concerns.' " (Quoting id. at 30, 10 P.3d 901 ). The state posits that, because all the elements of a lesser-included offense are subsumed in a greater inclusive-offense, the lesser-included offense "does not address a separate legislative concern." Thus, it appears that, in the state's view, a pair of statutes that define a lesser-included offense and a greater-inclusive offense always constitutes a single statutory provision for the purposes of ORS 161.067(1).
The state's argument is unavailing for three reasons. First, statutes defining lesser-included and greater-inclusive offenses can be directed at different legislative concerns. As the legislative history discussed above shows, the legislature enacted the aggravated identity theft statute to address specific concerns about large-scale identity thefts that were not addressed by the identity theft statute.
Second, the state's approach, based on Barrett and focused solely on whether the statutes address separate legislative concerns, is the same approach that this court **285 rejected in White , stating that "the appropriate inquiry is whether the legislature intended to create a single crime or two crimes." 346 Or. at 283, 211 P.3d 248. We are to "view the statute as a whole, looking to the text, context, and, when appropriate, legislative history of the statute." Id . Here, all those sources indicate that the identity theft statute and the aggravated identity theft statutes were intended to create separate crimes.
Third, and perhaps most importantly, if, as the state argues, a statute defining a lesser-included offense is not a separate statutory provision from a statute defining its greater-inclusive offense, then ORS 161.067(1) would not provide for the merger of lesser-included offenses into greater-inclusive offenses, even though it was intended to do so. See generally Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932) (holding that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not"); see also White , 346 Or. at 298, 211 P.3d 248 (2009) (Kistler, J., concurring) (concluding, based on the legislative history of former ORS 161.062(1) (1985), that ORS 161.067(1) codifies the Blockburger test); Testimony, Senate Judiciary Committee, SB 257, May 15, 1985, Ex G (statement of Peter F. Sandrock, Jr.,) (explaining that the provision that would become former ORS 161.062(1) (1985) "adopts the federal rule first announced in *** Blockburger ").
For those three reasons, we reject the state's argument that the identity theft statute and the aggravated identity theft statute are not separate statutory provisions. Accordingly, we conclude that ORS 161.067(1) applies.
*39 2. Whether ORS 165.800 and ORS 165.803 require proof of different elements
Because ORS 161.067(1) applies, the question becomes whether the identity theft statute and the aggravated identity theft statute each require proof of an element that the other does not. Here, defendant was charged with **286 aggravated identity theft under ORS 165.803(1)(d), which, again, provides:
"(1) A person commits the crime of aggravated identity theft if:
"* * * * *
"(d) The person violates ORS 165.800 and has in the person's custody, possession or control 10 or more pieces of personal identification from 10 or more different persons."
By its terms, aggravated identity theft under ORS 165.803 (1)(d) includes at least one identity theft, that is, one violation of ORS 165.800. The state does not dispute that. And, in the Court of Appeals, the state conceded that all 27 of defendant's identity thefts were lesser-included offenses of his aggravated identity theft. But on review, the state takes the position that, to prove aggravated identity theft under ORS 165.803(1)(d), it needs to prove only that a person committed one identity theft while possessing 10 or more personal identifications from 10 or more different persons; in other words, the state's position is that it does not need to prove that the person possessed those additional identifications with the intent to deceive or defraud, a necessary element of identity theft. According to the state, if a person committed identity theft by possessing an identification card with a false name, while innocently possessing a smartphone containing the personal identifications of 10 other persons (such as their names, addresses, and phone numbers, all of which qualify as "personal identification" under ORS 165.800(4)(b) ), the person would be guilty of aggravated identity theft under ORS 165.803(1)(d).
As should be apparent from the discussion of the legislative history of the aggravated identity theft statute above, 365 Or. at 279-80, 446 P.3d at 35-36, the state's interpretation of ORS 165.803(1)(d) is contrary to the legislature's intent. As recounted above, both proponents and legislators stated that to prove aggravated identity theft under the provision that became ORS 165.803(1)(d) the state would have to prove that the defendant possessed, with the intent to deceive or defraud, 10 or more pieces of personal identification. That is, the state would have to prove that the person's possession of **287 each of the identifications constituted identity theft.[6] *40 Again, Mygrant, a proponent of the bill, stated that the state
"would have to prove that [persons charged with aggravated identity theft] intended to defraud-that they possessed this personal identification-all 10 pieces with the intent to deceive or defraud. * * * [T]here's a variety of different ways we could do that-but we certainly would have to prove that they intended to defraud or deceive each specific ID that they had, and that there were more than 10 ."
**288 Tape Recording, Senate Committee on Commerce, SB 464, February 12, 2007, Tape 12, Side A (statement of Steve Mygrant) (emphasis added); id. (statement of Senator Prozanski) (confirming Mygrant's explanation). Correspondingly, when introducing the aggravated identity theft bill, SB 464, Representative MacPherson explained that, under the bill, a person would commit aggravated identity theft if the person committed identity theft and possessed "10 or more pieces of personal identification from 10 or more different victims ." Audio Recording, House of Representatives, SB 464, June 11, 2007, at 1:22:05 (comments of Greg MacPherson) (emphasis added), https://olis.leg.state.or.us/liz/2007R1/2007-06-11 (accessed July 16, 2019). Thus, the state's assertion that it needs to prove only one identity theft in order to prove aggravated identity theft under ORS 165.803(1)(d) is incorrect.[7]
It follows that the condition set out in subsection (1) of ORS 161.067 -that each statutory provision requires proof of an element that the other does not-is satisfied, as defendant contends. Thus, under subsection (1), defendant's identity thefts would merge with his aggravated identity theft.
3. Whether ORS 161.067(2) precludes merger
Having concluded that, under ORS 161.067(1), defendant's identity thefts would merge into his aggravated identity theft, we turn to the parties' arguments regarding ORS 161.067(2), which, again, provides in part:
"When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims."
(Emphasis added.) As described above, defendant argues that ORS 161.067(2) applies only when the same conduct or **289 criminal episode violates a single statutory provision and, therefore, does not apply here. The state disagrees, arguing that ORS 161.067(2) applies regardless of how many statutory provisions are violated. The parties' competing arguments are based, in part, on their differing interpretations of the word "though."
Defendant reads ORS 161.067(2) as providing, "When the same conduct or criminal episode, while violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims." According to defendant, "the violation of only one statutory provision is a predicate condition for the application of ORS 161.067(2)" and, therefore, "[t]o hold that ORS 161.067(2) applies in cases where a defendant violates more than one statutory provision would require this court to essentially rewrite ORS 161.067(2)," which it cannot do. See ORS 174.010 (when *41 interpreting a statute, a court is "not to insert what has been omitted or to omit what has been inserted").
The state disagrees. According to the state, "though," as used in ORS 161.067(2), means "even if." Thus, the state reads ORS 161.067(2) as providing, "When the same conduct or criminal episode, even if violating only one statutory provision involves two or more victims, there are as many separately punishable offenses as there are victims."
Both parties find support for their interpretations in the dictionary definition of "though," which provides:
"1 a : in spite of the fact that : WHILE < ~ they know the war is lost, they continue to fight -Bruce Bliven b. 1889 > < the earliest fishes, ~ remarkable, have close resemblances to some modern forms -W.E.Swinton > b : in spite of the possibility that : even if < ~ he slay me, yet I will trust in him -Job 13:15 (AV) > < ~ they may all ultimately fail, they do try -Harry Roskolenko > 2 obs : THAT, IF < no marvel, my lord, ~ it affrighted you -Shak.> < this book, ~ only forty pages, is quite difficult to read>"
Webster's Third New Int'l Dictionary 2381 (unabridged ed 1976) (boldface added). Thus, "though" can mean "while" or "in spite of the fact that," as defendant argues. E.g. , ORS 133.420 (" 'Fresh pursuit' includes *** the pursuit of **290 a person suspected of having committed a felony, though no felony actually has been committed.") And, it can mean "even if" or "in spite of the possibility that," as the state argues. E.g., ORS 34.110 ("[T]hough [a writ of mandamus] may require [a] court, corporation, board, officer or person to exercise judgment, or proceed to the discharge of any functions, it shall not control judicial discretion.") But the rest of the text of ORS 161.067(2) indicates that defendant's interpretation is what the legislature intended. That is because if, as the state contends, ORS 161.067(2) applies regardless of how many statutory provisions are violated, then there is no need for the phrase "though violating only one provision." In other words, if the legislature intended to provide that all violations against different victims constitute separately punishable offenses, it could have omitted the disputed phrase entirely, as follows:
"When the same conduct or criminal episode, though violating only one statutory provision involves two or more victims there are as many separately punishable offenses as there are victims."
Defendant's interpretation is also supported by the context of ORS 161.067(2), which includes the other subsections of the statute. Read together, the subsections of ORS 161.067 appear to apply in sequence to govern merger of increasingly similar statutory violations: ORS 161.067(1) applies when a defendant violates two or more statutory provisions; ORS 161.067(2) applies when a defendant violates one statutory provision and the violations involve multiple victims; and ORS 161.067(3) applies when a defendant violates one statutory provision and the violations involve a single victim.
That interpretation is further supported by the legislative history of ORS 161.067(2). As this court has recounted, ORS 161.067 had a "not quite identical twin": former ORS 161.062 (1985). Crotsley , 308 Or. at 276 n. 3, 779 P.2d 600. The two statutes have an "intertwined and convoluted relationship":
"Both statutes began as identically worded proposals to the legislature and to the electorate, proposals which apparently derived from a common source. ORS 161.062 began as a provision of Senate Bill 257 (1985), proposed to the **291 legislature by the Department of Justice on behalf of the Oregon District Attorneys Association. An identical proposal was included in the omnibus 'Crime Victims' Bill of Rights' initiative filed with the Secretary of State in April 1985. The Secretary of State certified the initiative as Ballot Measure 10 (1986), the electorate approved it in November 1986, and it became effective in December 1986. Its multiple conviction and sentencing provision was codified as ORS 161.067.
"In May 1985, after the initiative had been filed with the Secretary of State, the legislature amended SB 257. In June 1985, the legislature enacted House Bill 2331 (1985), an identically worded House version of amended SB 257. HB 2331 became effective in July 1985 and was codified as *42 ORS 161.062 and ORS 137.122. In effect, the original proposed multiple conviction and sentencing statute was enacted twice, first in an amended legislative version, ORS 161.062, and later in an unamended initiative version, ORS 161.067."
Id . Thus, former ORS 161.062 (1985) and ORS 161.067 began as identical proposals, one as a bill and the other as an initiative. The bill was amended in the legislature, took effect in July 1985, and was codified as former ORS 161.062 (1985). The initiative took effect in December 1986 and was codified as ORS 161.067. Both provisions continued in force until 1999, when the legislature repealed former ORS 161.062 (1985) on the recommendation of the Oregon Law Commission, because the enactment of ORS 161.067, "with its nearly identical wording, had rendered the older statute obsolete." State v. Nix , 355 Or. 777, 786 n. 4, 334 P.3d 437 (2014), vac'd on other grounds , 356 Or. 768, 345 P.3d 416 (2015).[8]
Given their shared history, this court has treated former ORS 161.062 (1985) and ORS 161.067 as essentially interchangeable. Nix , 355 Or. at 786, 334 P.3d 437 ; accord Barrett , 331 Or. at 29 n. 1, 10 P.3d 901. It has concluded that the statutes were intended to have the same meaning, and it has used the legislative history of each to determine that meaning. Nix , 355 Or. at 786, 334 P.3d 437 (stating, in reference to former ORS 161.062 (1985) and ORS 161.067, "[o]rdinarily, when legislation has been essentially reenacted with no material change, we assume-in **292 the absence of evidence to the contrary-that no change in meaning was intended," and concluding that nothing in the history of ORS 161.067 suggests that it was intended to have a difference meaning than former ORS 161.062 (1985) ). That is significant because the provision of former ORS 161.062 (1985) that corresponds to ORS 161.067(2) applied only to violations of a single statutory violation. Former ORS 161.062 (1985) provided, in part:
"(1) When the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory provisions ***.
"(2) *** [W]hen the same conduct or criminal episode violates only one statutory provision , but involves two or more victims, there are as many separately punishable offenses as there are victims."
(Emphasis added.) Thus, former ORS 161.062(1) (1985) applied to violations of "two or more statutory provisions," and former ORS 161.062(2) (1985) applied to violations of "only one statutory provision." That suggests, as defendant argues, the same is true for ORS 161.067(1) and (2).
That suggestion is bolstered by another aspect of the legislative history of ORS 161.067. As this court noted in Crotsley , 308 Or. at 276 n. 3, 779 P.2d 600, former ORS 161.062 (1985) and ORS 161.067 appear to have a common source. That source appears to be ORS 131.505, which governs when the same conduct or criminal episode constitutes an offense for the purposes of Oregon's former jeopardy statutes. ORS 131.505 contains phrases identical to those in ORS 161.067(1) and (2). It provides, in part:
"(2) When the same conduct or criminal episode violates two or more statutory provisions , each such violation constitutes a separate and distinct offense.
"(3) When the same conduct or criminal episode, though violating only one statutory provision , results in death, injury, loss or other consequences of two or more victims, and the result is an element of the offense defined, there are as many offenses as there are victims."
**293 (Emphasis added.) The italicized phrases are identical to those in ORS 161.067(1) and (2). In context, they indicate that in the phrase "though violating only one statutory provision," "though" means "while." It does not mean "even if." That is because ORS 131.505(2) provides that, if the same conduct or criminal episode violates two or more statutory provisions, each violation constitutes a separate offense for former jeopardy purposes.
*43 Thus, whenever there are two or more statutory violations, ORS 131.505(2) resolves the matter of the number of offenses for double jeopardy purposes and there is no need to proceed to ORS 131.505(3). Given the scope of ORS 131.505(2), we conclude that, as used in ORS 131.505(3), the phrase "though violating only one statutory provision" means "while violating only one statutory provision." And, because ORS 131.505(3) is the likely source of the same phrase in ORS 161.067(2), it is likely that the phrase has the same meaning in ORS 161.067(2).
To summarize, the text of ORS 161.067(2) indicates that the phrase "though violating only one statutory provision" means that ORS 167.067(2) applies only to violations of a single statutory provision, because the phrase would be unnecessary if ORS 161.067(2) applied to violations of two or more statutory provisions. The context of ORS 161.067 supports that interpretation because the subsections of ORS 161.067 appear to cover increasingly narrow circumstances. The legislative history also supports that interpretation because the parallel subsection of former ORS 161.062 (1985), a statute that this court has held was intended to have the same meaning as ORS 161.067, applied only to violations of a single statutory provision; in addition, ORS 131.505(3), which is the likely source of the phrase, applies only to violations of a single statutory provision.
In light of the text, context, and legislative history of ORS 161.067(2), we conclude that ORS 161.067(2) applies only when the same conduct or criminal episode violates a single statutory provision. Therefore, it does not apply when, as here, a defendant's conduct violates both the identity theft statute and the aggravated identity theft statute because, as discussed above, those statutes are separate statutory provisions for the purposes of ORS 161.067.
**294 We pause to address two arguments the state makes against such a holding, which the dissent echoes. First, the state argues that holding that ORS 161.067(2) applies only to violations of a single statutory provision is inconsistent with the purpose of ORS 161.067. For support, the state relies on the voters' pamphlet statement regarding the initiative that became ORS 161.067, which stated that the initiative would "[s]lightly expand circumstances under which a person may be convicted of separate offenses and may be given consecutive sentences." Official Voters' Pamphlet, General Election, November 4, 1986, 52. That brief, nonspecific statement is of limited value. It provides little, if any, support for the state's argument, given that it describes the effect of the initiative as "slightly" expanding the circumstances in which a person could be convicted of separate offenses based on the same conduct or criminal episode. Nothing in the voters' pamphlet indicated that the initiative would allow a court to convict a defendant of both a greater-inclusive offense and a lesser-included offense based on the same conduct and victim.
The state also relies on the legislative history of former ORS 161.062 (1985), stating that "proponents of SB 257 made clear that they sought to ensure that criminal histories accurately reflected a defendant's criminal conduct." That is correct, but it does not mean that the proponents of SB 257 intended to authorize courts to convict a defendant of both an aggregate crime and its component crimes.[9] A conviction for an aggregate crime, like aggravated identity theft under ORS 165.803(1)(d), accurately reflects a defendant's conduct because it is for a more serious crime and reflects all the victims of the component crimes. Indeed, the proponents of the aggravated identity theft statute made that clear, asserting that the crime of aggravated identity theft would enable the state to charge a single aggregated crime, which *44 would reflect the more serious nature of a defendant's conduct and **295 serve as the basis for restitution for all the victims of the component crimes. Tape Recording, Senate Committee on Commerce, SB 464, Feb. 12, 2007, Tape 11, Side A (statement of Raul Ramirez); id. at Tape 12, Side A (statement of Gina Skinner).[10]
Second, the state also argues that holding that ORS 161.067(2) applies only to violations of a single statutory provision will lead to absurd results. In support of that argument, the state proffers a hypothetical example involving aggravated murder, which is defined by ORS 163.095. That statute provides, in part:
" '[A]ggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:
"* * * * *
"(d) There was more than one murder victim in the same criminal episode as defined in ORS 131.505."
The state contends that, if ORS 161.067(2) applies only to violations of a single statutory provision, then, if "a person who murders three victims *** is convicted of one count of aggravated murder (based on killing more than one person in the same criminal episode) and three counts of murder," the three murders merge into the aggravated murder "because murder is a lesser-included offense of aggravated **296 murder." In response, defendant argues that only one of the murders merges into the aggravated murder because, under Barrett , the other two murders are not lesser-included offenses of the aggravated murder.
In Barrett , this court held that "the various aggravating circumstances [listed in the aggravated murder statute] are not 'elements' for the purpose of merger, but, rather, alternative ways of proving the element of aggravation." 331 Or. at 37 n. 4, 10 P.3d 901. Therefore, under Barrett , if a defendant is charged with aggravated murder of one victim on the ground that there were two other murder victims in the same criminal episode, the murders of the two other victims are not lesser-included offenses of the aggravated murder. In this case, the state does not argue that Barrett was wrongly decided, and under Barrett , the state's hypothetical example does not lead to the result the state identifies.
Furthermore, in response to the state's concern about merger of offenses with different victims, we emphasize that, because the state aggregated multiple identity thefts against individual victims in order to charge defendant with a single count of aggravated identity theft against the same victims, this case does not involve merger of an offense against one victim into an offense against a different victim. The individual identity thefts do not merge with each other; instead, they each merge into the aggravated identity theft.[11]
*45 C. Remedy
Finally, the state argues that we should remand for further proceedings so the state can "dismiss the aggravated identity theft count at the resentencing, then the trial court would have discretion to impose the identity theft sentences concurrently or consecutively in order to reach **297 an appropriate aggregate sentence." In response, defendant argues that the state's proposed dismissal of the aggravated identity theft count would violate the parties' plea agreement. We agree with defendant. Defendant and the state agreed that defendant would plead guilty to all the charges, but would argue that the identity thefts merged into the aggravated identity theft. Indeed, in his plea petition, defendant specifically reserved the right to make that argument and noted that it "may limit sanctions." Thus, the state agreed that defendant could argue for merger, which would limit the sanction that the court could impose. Having secured defendant's guilty pleas based on that agreement, the state cannot retract it now. Consequently, we reverse the decision of the Court of Appeals and the judgment of the trial court, and we remand the case to the trial court with instructions to merge the identity thefts into the aggravated identity theft and for resentencing.
IV. CONCLUSION
To summarize, we conclude that, when the state aggregates multiple identity thefts in order to charge aggravated identity theft, the identity thefts are lesser-included offenses of the aggravated identity theft, and they merge into the aggravated identity theft under ORS 161.067(1), because the violations are based on the same conduct, are violations of two statutory provisions, and neither provision requires proof of an element that the other does not. ORS 161.067(2) does not preclude the merger because it applies only to violations of a single statutory provision. Consequently, in this case the trial court erred in failing to merge defendant's identity thefts into his aggravated identity theft.
The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings consistent with this opinion.
Garrett, J., dissented and filed an opinion in which Balmer, J., joined.

The state charged defendant with a total of 30 counts: one count of aggravated identity theft (count 1); one count of second-degree burglary, ORS 164.215, for entering a building to commit theft of the files (count 2); 27 counts of identity theft (counts 3-29), and one count of third-degree theft, ORS 164.043, for theft of the files (count 30). Defendant pleaded guilty to all the counts, but only his convictions for aggravated identity theft and identity theft are at issue on appeal.

To illustrate, the first two identity theft counts were as follows:
"COUNT 3
"As part of the same act and transaction alleged in Count 1 [aggravated identity theft]: The defendant *** did unlawfully, with the intent to deceive or defraud, obtain, possess, transfer, create, utter or convert to the person's own use the personal identification of another.
"COUNT 4
"As part of the same act and transaction alleged in Count 1 [aggravated identity theft]: The defendant * * * did unlawfully, with the intent to deceive or defraud, obtain, possess, transfer, create, utter or convert to the person's own use the personal identification of another, to wit: personal identification from a different person than from each of counts 3-29."

Mygrant and Prozanski were correct. As explained below, 365 Or. at 287 n. 6, 446 P.3d at 39-40, although section 1(1)(d) does not specify a particular culpable mental state with respect to the element of possession of 10 or more pieces of personal identification, the general culpability statutes, ORS 161.085 to ORS 161.115, require that the state prove that the possession was with the intent to deceive or defraud.

Nothing in the legislative history suggests that the legislature intended the aggravated identity theft statute to allow the state to expand the number of charges it could bring and convictions it could secure, as the dissent suggests it does.

ORS 161.067 has been referred to as the "anti-merger" statute. See, e.g., White , 341 Or. at 629, 147 P.3d 313. But it is important to bear in mind that, under ORS 161.067, merger is the default result; statutory violations based on the same conduct or criminal episode merge unless the circumstances described in ORS 161.067 exist. See , e.g. , State v. Blake , 348 Or. 95, 98-99, 228 P.3d 560 (2010) (holding that all three of the circumstances identified in ORS 161.067(1) had to exist in order for there to be separately punishable offenses under that subsection).

In arguing that it can secure a conviction for aggravated identity theft under ORS 165.803(1)(d), without proving that a defendant possessed the 10 or more pieces of personal identification with the intent to deceive or defraud, the state points out that ORS 165.803(1)(d) does not specify a culpable mental state for the possession of the identifications. But ORS 165.803(1)(d) is not required to do so. That is because the general culpability statutes provide for one. See State v. Simonov , 358 Or. 531, 537, 368 P.3d 11 (2016) ("The statute defining an offense determines its applicable mental state (or mental states), as informed by the Oregon Criminal Code general culpability provisions, ORS 161.085 to 161.115.") Those statutes were enacted to establish rules regarding which elements of a crime require which culpable mental states.
Two of the general culpability statutes are relevant here. The first, ORS 161.095(2), requires a culpable mental state for every material element of an offense. Id. (providing that "a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state"); State v. Blanton , 284 Or. 591, 595, 588 P.2d 28 (1978) (holding that the phrase "that necessarily requires a culpable mental state" was meant "to distinguish those elements defining the substance or quality of the forbidden conduct from others relating *** solely to the statute of limitations, jurisdiction, venue, and the like") (internal quotation marks omitted); Simonov , 358 Or. at 537, 368 P.3d 11 (following Blanton ); see also State v. Olive , 259 Or. App. 104, 113 n. 2, 312 P.3d 588 (2013) ("[U]nder ORS 161.095(2), unless the legislature expressly provides otherwise, a culpable mental state is required for all facts that the state must prove beyond a reasonable doubt to convict a defendant except those that relate solely to the statute of limitations, jurisdiction, venue, or other procedural prerequisites to conviction."). That requirement applies to offenses, like identity theft and aggravated identity theft, that are defined by statutes outside the criminal code, unless the statute defining the offense "clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof." ORS 161.105(1)(b) ; see also ORS 161.005 (enumerating the statutes that may be cited as part of the criminal code).
The second statute, ORS 161.115(1), provides that, "[i]f a statute defining an offense prescribes a culpable mental state but does not specify the element to which it applies, the prescribed culpable mental state applies to each material element of the offense ***." Here, because aggravated identity theft requires the commission of identity theft, and identity theft requires a specific culpable mental state-the intent to deceive or defraud-that mental state is required for all the material elements of aggravated identity theft, including-as the legislature intended-the element of the possession of 10 or more pieces of personal identification.

As an alternative argument, the state contends that, if ORS 165.803(1)(d) requires it to prove 10 or more identity thefts, then "this court should remand for entry of one count of aggravated identity theft and 17 counts of identity theft." We disagree, because there is no dispute that the state intended to include each of the 27 identity thefts as a basis for the aggravated identity theft. The aggravated identity theft statute permits aggregation of 10 or more acts of identity theft, and here the state chose to base the aggravated identity theft on all 27 of the identity thefts.

This court's first decision in Nix was vacated for lack of jurisdiction. We cite it for its summary of the history of former ORS 161.062 (1985) and ORS 161.067.

As noted above, 365 Or. at 290-91, 446 P.3d at 41-42, SB 257 became former ORS 161.062 (1985) which, unlike ORS 161.067, is not even susceptible to the interpretation the state advances that subsection (2) of the statute can apply regardless of whether there is a violation of a single statutory provision or multiple statutory provisions. Neither the state nor the dissent explains how that legislative history can support their desired outcome, when the language that the legislature enacted indicated that "when the same conduct or criminal episode violates only one statutory provision , but involves two or more victims, there are as many separately punishable offenses as there are victims." (Emphasis added.)

Moreover, nothing in the legislative history of former ORS 161.062 (1985) or ORS 161.067 or the cases that, according to the dissent, prompted the enactment of those provisions indicates that either the legislature or the voters were of the view that a conviction for an aggregate offense does not accurately capture the defendant's commission of the component offenses upon which it is based. To the contrary, as discussed above, the legislative history of ORS 161.067 shows that the legislature believed that a conviction for a greater-inclusive offense would reflect any lesser-included offenses. 365 Or. at 284-85, 446 P.3d at 38-39 (explaining that ORS 161.067(1) was intended to codify the "Blockburger test," under which, if all the elements of one offense are included in another, a conviction for the former subsumes the latter).
The dissent asserts that the state is not required to plead an exact number of victims and, therefore, a defendant's conviction will not necessarily accurately reflect the defendant's criminal conduct. But to provide a basis for restitution (and possibly to provide adequate notice, ensure that jurors concur in their verdicts, and protect against double jeopardy), the state will have to identify the persons whose identification the defendant possessed. See, e.g. , State v. Lefthandbull , 306 Or. 330, 333, 758 P.2d 343 (1988) (a court may impose restitution only for damages caused by criminal activities that a defendant either admits or is proved to have committed).

Defendant argues that ORS 161.067(1) precludes merger of an offense against one victim into an offense against a different victim. He contends that, for the purposes of ORS 161.067(1), the identity of a victim is an element of the offense and, therefore, if two offenses have different victims, then each has an element that the other does not. In this case, we need not and do not determine whether that is correct, because the victim of each of defendant's identity thefts is also a victim of his aggravated identity theft. But we note that defendant's interpretation would address the dissent's concern, 365 Or. at 310-12, 446 P.3d at 52-53, that ORS 161.067 would require merger of offenses committed against different victims.