66                      July 31, 2024                   No. 521

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GARY LEE ROSE,
*Defendant-Appellant.*

Clackamas County Circuit Court
CR1200025; A176443

Thomas J. Rastetter, Judge.

Argued and submitted October 13, 2023.

Morgen E. Daniels, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest J. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jennifer S. Lloyd, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Pagan, Judge, and Jacquot, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

In 2011, while executing a search warrant on defendant's cellphone, a police officer discovered sexually explicit photos and videos of a child, E, on a micro-SD memory card inside the phone. Defendant was subsequently tried and convicted of various crimes, after a trial at which the images from the SD card were admitted into evidence. In 2019, we reversed defendant's convictions and remanded for a new trial for reasons unrelated to this appeal. On remand, defendant moved to suppress the images from his phone, arguing that the 2011 warrant was invalid because it was insufficiently particular under *State v. Mansor*, 363 Or 185, 421 P3d 323 (2018), which announced heightened particularity requirements for warrants to search digital data. The state at that point obtained a new warrant to search the cellphone and SD card, which were in police storage. The 2019 warrant listed the SD card—which had been removed from the phone during the 2011 search and stored separately—as a separate item to search. Execution of the 2019 warrant resulted in re-discovery of the same sexually explicit photos and videos. Defendant filed additional motions to suppress, challenging both the 2011 warrant and the 2019 warrant. All of defendant's motions were denied. The images were again admitted into evidence at trial, and defendant was convicted of 13 crimes.

Defendant appeals, raising six assignments of error. Our disposition of the first two assignments of error, challenging the suppression rulings, makes it unnecessary to reach the other four. As discussed below, we conclude that the 2011 search was unlawful, because the search command in the 2011 warrant was not specific enough under *Mansor*, requiring suppression of the evidence from the 2011 search. We further conclude that the 2019 warrant was tainted by the 2011 illegality, requiring suppression of the evidence from the 2019 search. Accordingly, the trial court erred in denying defendant's motions to suppress, and we must reverse and remand yet again.

## I.   FACTS

On December 18, 2011, nine-year-old E reported to her aunt, Volk, that she had been sexually abused by

defendant, who was her mother's boyfriend. E was taken to the hospital the same day, where the police began an investigation. Deputy Case spoke to several witnesses at the hospital. Volk told Case that she had noticed earlier that day that E seemed unusually withdrawn and was not eating well, so she asked E if something was wrong. E responded that her "privates hurt" and then graphically described sexual abuse by defendant. Case asked E's mother if she believed E's allegations, and she responded that E did not smirk like she normally does when lying. While at the hospital, Case seized defendant's cellphone.

On December 20, E was interviewed by McVay at the Children's Center of Clackamas County. E said that defendant had "pictures of naked girls" on his cellphone and had showed her naked girls in underwear and no bras on his cellphone after touching E inside her vagina. E also described incidents of abuse in which defendant (1) directed E to use his cellphone to videorecord herself peeing in the bathroom, which she did; (2) showed E a video on his cellphone of a woman masturbating; and (3) showed E a picture on his cellphone of someone peeing into another person's mouth.

On December 22, 2011, Detective Voss applied for a warrant to seize and search defendant's cellphone. In his affidavit, Voss described the evidence from Case's investigation. He also attested to knowing from training and experience that people save pictures and videos on their cellphones; that "most" cellphones can store pictures and videos "in the phone's memory"; that people use cellphones to communicate by text message and sometimes attach pictures or videos, which "can be forms of evidence"; and that "names and phone numbers collected out of the memory of cellphones can provide investigators with information that could assist in the apprehension of wanted subjects, lead to other potential witnesses or lead to other persons who view child pornography." Voss asserted that he had probable cause to believe that defendant's "black Cricket LG cell phone" that Case had seized at the hospital contained evidence of the crimes of using a child in display of sexually explicit conduct (ORS 163.670), second-degree encouraging child sexual abuse (ORS 162.686), endangering the welfare

of a minor (ORS 163.575), and first-degree unlawful sexual penetration (ORS 163.411).

The warrant was issued. It authorized officers to "search, seize, analyze and test" "a black Cricket LG cell-phone that is stored in the Clackamas County Sheriff's Office (CCSO) Property Room under CCSO case #11-37846." Its only search command was to search for "[e]vidence of violation of" the four crimes listed above.

As part of executing the warrant, Detective Giddings conducted a forensic examination of defendant's cellphone. Giddings did not find any incriminating evidence in the phone's built-in memory, but he found sexually explicit photos and videos of E, as well as photos and videos of females urinating or masturbating and images of nude or partially clothed children, on a removeable micro-SD memory card that he found inside the phone. The SD card was located beneath the battery compartment and could be accessed only by removing the back of the phone.

Defendant was charged with various offenses against E, and the images, or testimony about the images, from his cellphone were admitted as evidence at trial. Defendant was convicted in 2013. He appealed, and, in 2019, we reversed his convictions and remanded for a new trial for reasons unrelated to this appeal. *State v. Rose*, 296 Or App 99, 437 P3d 1144 (2019).

On remand, defendant moved to suppress the direct and derivative evidence found in the 2011 search of his cellphone, including the SD card and the photos and videos. He argued that the warrant was insufficiently particular under *Mansor*, which had been decided during the pendency of his first appeal. Among other arguments, he contended that the warrant was not specific enough regarding the evidence sought and that it authorized a search of the cellphone but not the SD card.

At that point, the state sought a new warrant. Detective Fich, who had no previous involvement in the investigation, prepared the 2019 warrant application. Fich reviewed Case's report and other materials that predated the 2011 warrant application. He did not review anything

that related to or postdated the 2011 search, with one exception: He did review the "first section" of Giddings's report, which described Giddings's physical removal of the SD card from the cellphone during the 2011 search. Fich reviewed nothing else regarding the 2011 search and did not know what was found in the 2011 search.

In his affidavit, Fich described the 2011 police investigation. He also attested to knowing from training and experience that people save photographs and videos on their cellphones and "related personal digital storage media" and that photos or videos "created or used for purposes of sexual gratification" are likely to be found on cellphones and associated devices and may include depictions of the phone's owner or "others, including, in this case, [E]." Fich asserted that he had probable cause to believe that evidence of four crimes—using a child in display of sexually explicit conduct, second-degree encouraging child sexual abuse, first-degree sexual abuse, and first-degree unlawful sexual penetration—would be found on defendant's cellphone "and the 2GB Micro SD Card that [Giddings] removed from the cellular telephone."

The warrant was issued. It described the items to be seized, searched, and analyzed as follows:

> "One (1) black Cricket LG cellular telephone, bearing serial number 104KPTMO112385, currently stored in the Milwaukie Police Department, 3200 SE Harrison Street, Milwaukie, OR, 97222, under Milwaukie PD case #11-5112, PIC #27, ltem #1; and

> "One (1) 2GB Micro SD Card, currently stored in the Milwaukie Police Department, 3200 SE Harrison Street, Milwaukie, OR, 97222, under Milwaukie PD case#l l-5112, PIC#27, Item#2."

It commanded officers to search for evidence of the four crimes listed above, for the time period from September 12, 2011, to December 18, 2011, including "[p]hotographs and videos of [E], photographs and videos of [E] engaged in sexually explicit conduct or in any state of undress or engaged in urinating," and "[p]hotographs and videos shown to [E by defendant] described as pictures of naked girls, a video of a woman masturbating, and a photograph of someone urinating into another person's mouth."

Under authority of the 2019 warrant, Giddings conducted a new forensic examination of defendant's cellphone and SD card. Giddings discovered the same incriminating photos and videos as he had in 2011.

The state then responded to defendant's motions to suppress. The state argued that defendant's motions based on the 2011 warrant were "moot" given the 2019 warrant, which it contended was sufficiently particular under *Mansor*. Defendant disagreed. The court agreed with the state, denying defendant's motions but "without prejudice to move against the new warrant."

Defendant filed a second set of motions to suppress, challenging both the 2011 warrant and the 2019 warrant. At the hearing on defendant's motions, the state defended the validity of both warrants but argued that it was only necessary to rule on the 2011 warrant if the court decided that the 2019 warrant was invalid. Defendant disagreed. Among other things, defendant argued that the 2019 warrant was "poisonous fruit of the tree," because the police learned about the SD card's existence while executing the 2011 warrant, which defendant maintained was an invalid warrant, then used that information to obtain the 2019 warrant that expressly authorized a seizure and search of the SD card. In response, among other things, the state asserted that it had been lawful to search the SD A182578 card while executing the 2011 warrant and that the 2019 warrant listed the SD card separately only because it had been "stored separately" after the 2011 search. The court summarily denied defendant's suppression motions, ruling that the 2019 warrant "was valid." The court appears to have agreed with the state that, in light of that determination, it was unnecessary to rule on the validity of the 2011 warrant.

Undeterred, defendant—who was self-represented (with a legal advisor) for most of his second trial proceeding—filed a third set of motions to suppress, making the same arguments against both warrants. The court allowed defendant to call Voss, Fich, and Giddings to testify about the 2019 warrant. The court summarily denied defendant's motions. It appears to have done so based solely on the

validity of the 2019 warrant, either deciding that issue anew or declining to reconsider the court's prior ruling.

Defendant proceeded to trial. The images, or testimony about the images, found in the 2019 warranted search of the SD card were admitted into evidence. Defendant was convicted of two counts of first-degree unlawful sexual penetration, seven counts of using a child in a display of sexually explicit conduct, and four counts of first-degree sexual abuse. He appeals the resulting judgment of conviction.

## II.   ANALYSIS

Defendant contends that the trial court erred in denying his motions to suppress. He challenges the validity of both the 2011 warrant and the 2019 warrant. As the moving party, defendant had the burden to prove that the warranted searches were unlawful. *State v. Walker*, 350 Or 540, 553-55, 258 P3d 1228 (2011).

We need not address all of the issues raised by defendant, only those that prove dispositive. We therefore limit our discussion to defendant's specificity challenge to the 2011 warrant and defendant's taint challenge to the 2019 warrant.

### A.   *The 2011 Warrant Is Insufficiently Specific under* Mansor

Defendant argues that the 2011 warrant was insufficiently specific as to what evidence the police were to search for on defendant's cellphone. We agree.[1]

Article I, section 9, of the Oregon Constitution, provides that "no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." The particularity requirement includes two related but distinct concepts: specificity and overbreadth. *Mansor*, 363 Or at 212. A warrant must be specific enough to allow

---

[1] We do not understand the trial court to have ruled on the validity of the 2011 warrant, but that issue was thoroughly briefed and argued below and is appropriate for us to address. *See Sherertz v. Brownstein Rask*, 314 Or App 331, 341, 498 P3d 850 (2021), *rev den*, 369 Or 338 (2022) (regarding when we will address an issue presented to, but not decided by, the trial court).

an officer to identify with reasonable effort the place to be searched and the items to be seized. *Id.* It also must not be overbroad, that is, it must not permit a search broader than the probable cause that the affidavit supports. *Id.*

For searches of electronic devices, a warrant is specific enough to satisfy the particularity requirement if it "describe[s], with as much specificity as reasonably possible under the circumstances, what investigating officers believe will be found" on the device, including, "if available and relevant, a temporal description of when the information was created, accessed, or otherwise used." *Id.* at 216, 222 (emphasis omitted); *see also id.* at 216 ("the 'what' is a description of the information related to the alleged criminal conduct which there is probable cause to believe will be found" on the device (emphasis omitted)). "[T]he essential 'thing' about which a warrant must be particular is the probative information, not types of files or their location within the computer's file-management system[.]" *State v. Savath*, 298 Or App 495, 500, 447 P3d 1, *rev den*, 365 Or 722 (2019).

The 2011 warrant contained a single search command, directing officers to search for evidence of the crimes of using a child in display of sexually explicit conduct, second-degree encouraging child sexual abuse, endangering the welfare of a minor, and first-degree unlawful sexual penetration. Defendant argues that that command was not specific enough, especially given that the warrant did not limit the search to a particular timeframe or to evidence of crimes against E. The state counters that Voss's affidavit supplied the necessary specificity by making clear that the officers were to search for evidence of crimes against E and the type of images that E described.

The 2011 warrant on its own is clearly not specific enough. A command to search for "evidence of a particular crime" is not specific enough to satisfy Article I, section 9. *Mansor*, 363 Or at 213-14 (holding that a warrant authorizing the search of a computer for "evidence of a particular crime," without more, was not sufficiently specific); *State v. Vesa*, 324 Or App 674, 687, 527 P3d 786 (2023) ("[A] warrant authorizing a search for all 'evidence of a particular crime'

is not sufficiently specific to pass constitutional muster." (Internal quotation marks omitted.)).[2]

The key question, then, is whether Voss's affidavit supplied the necessary specificity. *See Mansor*, 363 Or at 218-220 (concluding that limiting language in the affidavit attached to the warrant cured the nonspecificity of the warrant); *Vesa*, 324 Or App at 687 (when an affidavit is part of the warrant, we "read the warrant's search commands in conjunction with and limited by the descriptions in the affidavit" (internal quotation marks omitted)). Defendant contests that the affidavit was attached to the warrant, but we assume for present purposes that it was, and we conclude that the affidavit did not make the warrant specific enough.

*State v. Turay*, 371 Or 128, 532 P3d 57 (2023), is instructive in reaching that conclusion. In that case, officers obtained a warrant to search the defendant's cellphones as part of an investigation into whether he had compelled and promoted prostitution by a minor, J. *Id.* at 131. The Supreme Court held that the warrant's command to search for "[a]ny and all communications" between the defendant, J, and a named witness" was not specific enough, because it lacked time and subject-matter restrictions that could have been included based on information available to the officers. *Id.* at 152-53. The Supreme Court held that the warrant's command to search for "[a]ny evidence regarding the locations, including geolocation information, of the phones" during a particular timeframe also was not specific enough, despite the timeframe limitation and description of the type of information sought, because it "omitted additional limiting factors that were known to law enforcement." *Id.* at 152, 154. The court emphasized that "warrants to search for digital data must describe the evidence sought with a heightened degree of specificity to satisfy the constitutional particularity requirement." *Id.* at 149.

In this case, it is true, as the state asserts, that a reasonable officer reading the 2011 warrant and

---

[2] We disagree with the state that the warrant was sufficiently particular given the nature of child pornography charges. The charges here were not limited to child pornography, making this case distinguishable from *State v. Rose*, 264 Or App 95, 330 P3d 680, *rev den*, 356 Or 400 (2014), on which the state relies.

affidavit together would have understood to search for sexually explicit photos or videos of E, as well as sexually explicit videos or photos of the type allegedly shown to E by defendant. However, the affidavit does not describe the evidence sought "as specifically as reasonably possible in the circumstances." *Id.* at 154 (internal quotation marks omitted).

First, the 2011 warrant does not include any timeframe limitation, even though timeframe information was available to the officers. In preparing his 2011 affidavit, Voss had access to the same information from Case's investigation that Fich had in 2019, including that there was an allegation of abuse on September 12, 2011,[3] and that E had reported abuse to her aunt on December 18, 2011. Based on that information, Fich requested a warrant to search for evidence in a three-month window from September 12, 2011, to December 18, 2011, and Voss could have done the same. Alternatively, Voss could have used a longer timeframe based on when E's mother began dating defendant, which is the earliest that any abuse could have occurred. This is not a case where no timeframe was available. *Cf. State v. Paye*, 310 Or App 408, 416-17, 486 P3d 808 (2021) (recognizing that the lack of a timeframe is not fatal to a warrant's specificity if there is no indication that a timeframe was available to police, especially when the alleged criminal conduct is ongoing in a way that makes the timeframe less relevant).

Second, the affidavit contained language that created ambiguity about the scope of the authorized search. *See Turay*, 371 Or at 146 n 10 ("a description that is insufficiently specific creates a risk that the description will be understood by officers to authorize a broader search than the probable cause supports," which "creates ambiguity about the scope of the search that is authorized"). A reasonable officer reading the 2011 warrant and affidavit together could understand, given the averments in the affidavit based on Voss's training and experience, that the search of defendant's cellphone was to include searching for names, phone numbers, and text

---

[3] On December 18, 2011, the same day that he started his investigation, Case reported E's abuse allegations to DHS. In 2019, Fich reviewed DHS's "screening report," which mentioned a prior abuse allegation from September 12, 2011, that had been deemed unfounded. Per Fich, that screening report was prepared before Voss drafted his 2011 affidavit.

messages regarding "potential other witnesses" or "other persons who view child pornography." That is especially so given the information in the affidavit regarding defendant showing E photos of "naked girls" on his cellphone.

For those reasons, although Voss's affidavit made the search command somewhat more specific, it did not make it specific enough to satisfy the heightened particularity requirement for digital data articulated in *Mansor*. *See Turay*, 371 Or at 145-46 (rejecting the state's argument that search categories are sufficiently specific "*as long as* its description permits law enforcement to identify with a reasonable degree of certainty whether a given piece of data falls within the search category, *no matter how broad the scope of the description*," as inconsistent with *Mansor* (emphases in original)). The 2011 warrant was therefore invalid, which means that the 2011 search was unlawful and that the evidence from that search must be suppressed.

B.  *The 2019 Warrant Is Tainted*

We next consider the 2019 warrant. Defendant argues that the 2019 warrant "was not independent of the 2011 warrant" and "that the evidence re-obtained in 2019 was thus tainted by the first unlawful search." The state maintains that the 2019 warrant is an "independent source" of the evidence. It views the 2019 warrant as entirely independent of the 2011 warrant. We agree with defendant.

"Evidence that is obtained as the result of an unconstitutional act is generally suppressed." *State v. Thompson*, 370 Or 273, 289, 518 P3d 923 (2022). In determining whether evidence obtained pursuant to a warrant is subject to suppression based on a prior illegality, the question is whether the warranted search is tainted by the prior illegality. *State v. DeJong*, 368 Or 640, 642, 497 P3d 710 (2021). That is, the question is whether the prior illegality had an effect on the subsequent discovery of evidence. *Id.* at 654 (stating that "the focus of the inquiry is not on the legality of the act providing authority to search" but "on the effect that the prior illegality may have had on the authorized search"). In making that assessment, courts are to apply the burden-shifting

framework from *State v. Johnson*, 335 Or 511, 73 P3d 282 (2003).

Under the *Johnson* framework, "the defendant has the initial burden to establish a minimal factual nexus between the illegality and the challenged evidence." *DeJong*, 368 Or at 642. The "burden of establishing a factual nexus is *minimal* and intended merely to rebut the presumption of regularity attendant to warranted searches." *Id.* at 654-55 (emphasis in original). If the defendant meets that burden, then "the burden shifts to the state to establish that the challenged evidence was untainted by the illegality." *Id.* at 642. In other words, once the minimum factual nexus is established, "there is a presumption that the challenged evidence must be suppressed, but the state has the opportunity to rebut that presumption." *Turay*, 371 Or at 164.

We readily conclude that defendant established a minimal factual nexus between the unlawful 2011 search and the evidence obtained in the 2019 search. Before searching defendant's cellphone in 2011, the police were unaware that it contained an SD card. They learned of the SD card during the 2011 search. Eight years later, the prosecutor requested Fich to apply for a new warrant and gave him instructions how to proceed, Fich learned in preparing the warrant application that Giddings had removed an SD card from defendant's cellphone, and Fich applied for a warrant to search both the cellphone and the SD card. Execution of that warrant resulted in the discovery of the challenged evidence. That establishes a minimal factual nexus between the challenged evidence (the images on the SD card and related testimony) and the prior illegality (the 2011 search that revealed the existence of the SD card). *See DeJong*, 368 Or at 654 (holding that a minimum factual nexus existed where the warrant application referenced evidence discovered in a prior illegal seizure); *Johnson*, 335 Or at 521 (holding that a minimum factual nexus existed where "the police used information derived from an earlier unlawful seizure, *viz.*, the fact that the clothes could be found in a police evidence locker, when they later applied for a search warrant").

The burden thus shifted to the state to overcome the presumption of taint. The state failed to do so. Indeed,

the state failed to even try to do so, because it did not recognize the factual nexus between the 2011 search and the 2019 warrant.

The state might well have been able to overcome the presumption of taint, had it recognized the need to do so. "The independent source doctrine permits the introduction of 'evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality.'" *Johnson*, 335 Or at 519 (quoting *Murray v. United States,* 487 US 533, 537, 108 S Ct 2529, 101 L Ed 2d 472 (1988)). There is a theory of independent source that is subsumed within the inevitable discovery doctrine. *Murray*, 487 US at 537-41 (illustrating the overlapping principles of the doctrines of independent source and inevitable discovery as applied in *Nix v. Williams*, 467 US 431, 104 S Ct 2501, 81 L Ed 2d 377 (1984)). The idea is that "[*s*]*ince* the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." *Id.* at 539 (emphasis in original). Thus, for example, in *State v. Johnson*, 340 Or 319, 326-27, 328 & n 6, 131 P3d 173 (2006), the police relied in part on information from an unlawful warranted search to obtain a subsequent warrant, resulting in a taint, but the state overcame the presumption of taint by putting on evidence that, if the invalid warrant had not issued, the state would have obtained a warrant without using the unlawfully obtained information, which was "not necessary to establish probable cause," and thus inevitably discovered the challenged evidence by execution of a valid warrant that was "independent" of the prior illegality.

Here, Fich's knowledge of the existence of the SD card was based entirely on information from the unlawful 2011 search, specifically Giddings's 2011 report that he had "removed and separated a 2GB Micro SD card from inside the black Cricket LG cellular" phone seized from defendant. Had the state recognized that factual connection, it could have put on evidence to try to show, for example, that, had the 2011 warrant application been rejected for lack of particularity, the state would have filed a new warrant application that was more particular—which necessarily would not

have included information from the 2011 search, as there would have been no 2011 search—and would have successfully obtained a lawful warrant to search defendant's cellphone, including the SD card. *See State v. Miller*, 300 Or 203, 226, 709 P2d 225 (1985), *cert den*, 475 US 1141 (1986) (to purge the taint under the inevitable discovery doctrine, the state must show "(1) that certain proper and predictable investigatory procedures would have been utilized in the instant case, and (2) that those procedures inevitably would have resulted in the discovery of the evidence in question"). But, in fact, the state did not develop any theory or put on any evidence to overcome the taint on the evidence from the 2019 warranted search.[4]

The trial court therefore erred in denying defendant's motions to suppress, and the error was not harmless, because the state relied on the images from the SD card and related testimony as either direct or corroborating evidence for all of the charges. Accordingly, we must reverse and remand yet again.

Reversed and remanded.

---

[4] *Cf. State v. Sines*, 287 Or App 850, 881-82 & n 2, 404 P3d 1060 (2017), *rev den*, 362 Or 545 (2018) (noting that the state "had a full opportunity to put on whatever evidence it could to dispute defendant's view that the warrant, and the items seized pursuant to it, were fruits of the poisonous tree" and did elicit testimony "to support the view that there might have been probable cause to support the warrant application even absent the [illegally obtained evidence]," but failed to "present any evidence that [the state] would have sought a warrant even in the absence of the [illegally obtained evidence]").